SALDANA v. GALVESTON, H. & S. A. RY. CO.

*(Circuit Court, W. D. Texas, El Paso Division. October 15, 1890.)*

1. RAILROAD COMPANIES—NEGLIGENCE—INJURIES TO PERSONS ON TRACK.
    Where a trespasser, walking along a railroad track, is struck and injured by a train, the liability of the railroad company depends upon the question whether those in charge of the train, after discovering that he was not going to leave the track, used all the means in their power to stop the train before it struck him.

2. SAME—CROSSINGS—SIGNALS.
    Rev. St. Tex. art. 4232, which provides that locomotives shall whistle or ring before crossing a road, and that a railroad company, neglecting this precaution, shall "be liable for all damage which shall be sustained by any person by reason of such neglect," does not render a company violating such statute liable for injury to one who saw the approaching train in time to avoid it.

3. MEASURE OF DAMAGES FOR TORTS.
    In an action for personal injuries the jury, in estimating the damages, may consider plaintiff's physical and mental suffering, the probable effect of the injury upon his health and the use of his limbs, his ability to labor and attend to his affairs, and generally any reduction of his power and capacity to earn money and to pursue the course of life which he might otherwise have done.

At Law.

*C. H. McGinnis* and *N. B. Bendy*, for plaintiff.

*Davis, Beall & Kemp*, for defendant.

MAXEY, J., *(charging jury.)* The plaintiff, Rafael Saldana, brings suit to recover of the defendant railway company damages for personal injuries alleged to have been inflicted upon him by one of the defendant's engines on the 6th day of September last, at the city of El Paso, Tex. It is in effect charged in the petition that the plaintiff's injuries resulted from the negligence of the defendant's servants and employes under substantially the following circumstances, to-wit: That plaintiff, in returning to El Paso, with two donkeys loaded with wood, desired to pass over a portion of defendant's road with his donkeys in order to cross a certain "hollow or gulch;" that before stepping upon the track he looked in both directions, east and west, to ascertain whether the track was clear, so that he could proceed along it without danger to himself and his animals, and after taking all necessary precautions, as he alleges, for his safety, he then got on defendant's said railway track with his said two donkeys to pass over said "hollow or gulch;" that immediately upon getting on the track he discovered, at a distance of about 360 feet, a switch engine of defendant approaching at a rapid rate, dashing around a curve of the track; that the engine gave no signal of its approach, by bell or whistle, but that, at said distance of about 360 feet, one of the defendant's employes on the engine "waved his hands to him, [plaintiff,] motioning to plaintiff to remove his donkeys from the track. which he was endeavoring to do, believing, after receiving said signal, that said switch engine would check up long enough for him to do so; but before he could remove the hindmost one from said track, the said switch engine * * * neither stopped nor slackened its speed, but negligently, willfully, recklessly, and wantonly, with great force and speed, ran against one of plaintiff's donkeys, which was in the lead, and threw him against the

hindmost one, thus knocking both off the track, * * * and thus struck plaintiff, as he was on the side of the track, in his attempt to escape, knocked him down, and run over him, and cut off one of his feet, and broke and crushed the other leg, and otherwise bruised and injured plaintiff." It is further alleged that defendant was also guilty of negligence, resulting in plaintiff's injuries, in failing to ring the locomotive bell or blow the whistle in approaching the public crossing, which is alleged to be about 120 yards west from the place of the accident. The court has thus given you a brief statement of the plaintiff's cause of action. In its answer the defendant denies, generally, all allegations in the petition contained, and further interposes, in bar of the action, the plea of contributive negligence on the part of plaintiff. The plaintiff attributing his injuries to the negligence of the defendant's servants as the direct cause of the same, it is incumbent upon him to establish by proof the truth of the charge he prefers, for if his injuries did not result directly from the negligence of the company's servants and employes, he would not be entitled to a recovery. What, then, is negligence? As defined by the supreme court, in *Railroad Co.* v. *Jones*, it "is the failure to do what a reasonable and prudent person would ordinarily have done under the circumstances of the situation, or doing what such a person, under the existing circumstances, would not have done. The essence of the fault may lie in omission or commission. The duty is dictated and measured by the exigencies of the occasion." 95 U. S. 441, 442.

But in reference to the question of negligence, we must, in this case, proceed further than simply to inquire into the failure of duty on the part of the employes of defendant. We must look to the testimony, and ascertain whether the plaintiff performed the duty which the law enjoined upon him. The defendant insists that he (the plaintiff) was the negligent party, and that he was the author of his misfortunes; and thus we have presented by the pleadings the concurrent negligence of both parties; negligence on the part of the defendant, and contributive negligence on the part of the plaintiff. In this connection it is further held by the supreme court, in the case cited, that "one who, by his negligence, has brought an injury upon himself, cannot recover damages for it. Such is the rule of the civil and of the common law. A plaintiff, in such cases, is entitled to no relief. But where the defendant has been guilty of negligence also, in the same connection, the result depends upon the facts. The question in such cases is (1) whether the damage was occasioned entirely by the negligence or improper conduct of the defendant; or, (2) whether the plaintiff himself so far contributed to the misfortune, by his own negligence or want of ordinary care and caution, that but for such negligence or want of care and caution on his part the misfortune would not have happened. In the former case the plaintiff is entitled to recover, in the latter he is not." Id. 442. Now, gentlemen, look to the facts, and, applying to them the rules of law above announced, determine the question of negligence as between the parties. It has been clearly shown, not only by the testimony of the defendant, but also by that of plaintiff, that just prior to the accident, while the

plaintiff was on the railway track, driving his two donkeys up and along the track in the direction of the switch engine, he discovered the engine approaching at a distance, according to the testimony of the plaintiff himself, of 40 or 50 yards. Some of the witnesses, however, place it at a greater and some at a less distance. That the plaintiff was walking up the track, in view of the advancing engine, there is no doubt. It is further conceded that at the point where plaintiff got upon the track there was neither a street nor public crossing, the public crossing being something over 200 yards west. From the place of accident, looking east, the switch engine, on account of the curve in the road, could be seen only about 117 yards, and persons on the engine could see an equal distance looking west. As to the rate of speed of the engine prior to and at the time of the accident the testimony is conflicting, and you must satisfy yourselves upon that point from a consideration of all the facts and circumstances in evidence. The plaintiff further testified that an employe of the company on the engine waved his hand to him when the engine was 40 or 50 yards distant. The plaintiff insists that after he saw the approaching engine he did what he could to remove himself from the impending danger, but that he was unable to do so owing to the short interval which elapsed between the time he saw the engine and the collision which ensued. It is urged, however, by the defendant that the plaintiff could have easily protected himself by stepping on either side of the track, but that, instead of making his escape from a known danger, he was engaged in the effort to drive his donkeys from the track until it was too late to save himself. In view of the above facts, and others detailed by the witnesses, it becomes important in this immediate connection to consider the legal rights and duties of the plaintiff and defendant's employes, respectively. It is maintained by the defendant that the plaintiff was unlawfully on the track; that the employes on the engine had the right to a clear road-way, and that they further were authorized to presume that persons would remove themselves from the track before an advancing locomotive. Upon these points you are instructed that the employes operating the engine had the superior right to the use of the railway track for the purpose of enabling them to discharge the duties which the company owed to itself and the public. The plaintiff had no lawful right to use the track as a road-way for himself and animals, (*Railway Co.* v. *Garcia*, 75 Tex. 590, 13 S. W. Rep. 223,) and if he voluntarily chose to assume the risk of appropriating the track for such purpose, and his injuries resulted directly from his conduct in that respect, upon him must fall the consequences of his acts, and he cannot recover. *Railroad Co.* v. *Houston*, 95 U. S. 702.

Touching the duty of a railway company to persons on the track, it is said by the supreme court of this state, in *Railway Co.* v. *Richards*, that "a duty may be general, and owing to everybody, or it may be particular, and owing to a single person only, by reason of his peculiar position. * * * . The general duty of a railroad company to run its trains with care becomes a particular duty to no one until he is in a position to have a right to complain of the neglect; the tramp who steals a

ride cannot insist that it is a duty to him; neither can he who makes a highway of a railroad track, and is injured by the train." 59 Tex. 377. The principle, however, asserted by the court in the *Richards Case* cannot be taken without qualification. It is properly said by the same court, in *Railway Co.* v. *Weisen,* that "a man does not forfeit his life, or his right to remain whole, by going where he has no right to go, or being where he has no business." 65 Tex. 447. Hence, although a man may be unlawfully on the track, may be a trespasser, the employes of the company would have no right to carelessly and negligently run over him after his presence and danger became known to them. The rule is thus stated by the supreme court of this state:

"A plaintiff may recover, even if his own negligence exposed him to the risk of injury, if the defendant, after becoming aware of the danger, failed to use ordinary care to avoid the injury. * * * When the danger becomes known, the failure to use such care as a prudent man would, under the circumstances, amounts to indifference, from the consequences of which no one ought to be excused." *Railroad Co.* v. *Cocke,* 64 Tex. 158.

Your attention is directed to another principle bearing upon the question of negligence in this case, and it is this: "The law," says the supreme court of this state, "presumes that a person walking upon a railroad track will leave the same in time to prevent injury from an approaching train of which he has knowledge, or should have by the ordinary use of the senses of hearing and seeing, and the managers of the train may act upon this presumption." *Railway Co.* v. *Garcia,* 75 Tex. 591, 13 S. W. Rep. 223. It is not denied in this case that the plaintiff saw the approaching train. The employes on the engine, therefore, had the right to presume that he would leave the track in time to avoid injury. It was, however, the duty of the employes, at the instant they discovered he would not leave the track, to use a high degree of care, that is, use all the efforts in their power and within their means and ability to stop the train, and prevent the same from striking the plaintiff. But if, notwithstanding such efforts, they were unable to stop the train in time to prevent the injury, then the employes were not guilty of negligence. 75 Tex. 590, 13 S. W. Rep. 223.

It is further insisted by the plaintiff that it was the duty of the persons operating the engine to ring the locomotive bell, or blow the whistle on approaching the crossing, where the public road crosses the railway track, at a point about 200 yards west of the place of accident. He alleges in his petition that, had the company's employes on the engine blown the whistle or rung the bell, he would have received timely warning of the approach of the locomotive, and "would have removed his said donkeys and himself to a safe distance from said railway track before said switch engine could have reached the place where plaintiff was injured." The state statutes provide:

"A bell of at least thirty pounds weight, or a steam whistle, shall be placed on each locomotive engine, and the bell shall be rung or the whistle blown at the distance of at least eighty rods from the place where the railroad shall cross any road or street, and to be kept ringing or blowing until it shall have crossed such road or street, or stopped." Rev. St. Tex. art. 4232.

And for every neglect the statute further provides that the corporation owning the road shall "be liable for all damage which shall be sustained by any person by reason of such neglect." Referring to this statute Mr. Chief Justice STAYTON says:

"The statute does not provide that a failure to ring a bell or blow a whistle, or both, when a train is approaching a crossing, will absolutely render a railway company liable for an injury received by a person in attempting to cross its track; but it does provide that if these things are not done, the company shall be liable for all damages which shall be sustained by any person · by reason of such neglect." *Railway Co.* v. *Graves*, 59 Tex. 332.

To entitle a party to recover for failure to give the statutory signals, the injury must be the direct and proximate result of the failure to give them. The negligence, in such case, must cause the damage. Therefore negligence on the part of the complaining party, which is the proximate cause of the injury, will defeat his recovery, although the railway company may not have given the signals which the law requires to indicate the approach of the train, for, in that case, he contributes to his own injury, and it was not the result of the company's negligence in failing to give the signals. *Railway Co.* v. *Graves*, 59 Tex. 332; *Railroad Co.* v. *Houston*, 95 U. S. 702. The purpose of the signal is to give warning of the train's approach to persons at or near crossings and on the track, (*Railway Co.* v. *Gray*, 65 Tex. 35, 36;) but notice of that fact derived from any other source is equally effective, (*Railway Co.* v. *Graves*, *supra*.) Hence, if a person on the track already has timely notice of an approaching train, by observing it himself, (and of that fact, in this case, you must satisfy yourselves from the testimony,) he could not complain of the failure to give the statutory signals, for as to him the signals would be wholly unnecessary. After all, gentlemen, it is a question of the existence of negligence, and negligence causing or producing the plaintiff's injuries; and that question you must solve for yourselves from a consideration of all the facts and circumstances in evidence. Whether the signal was given by ringing the bell or blowing the whistle is another disputed question. If it was given, as defendant contends, the plaintiff has no cause of complaint on that score. If it was not given, then you will determine whether the plaintiff's injuries resulted directly and proximately from the failure of the company's employes to give the statutory signal. Review the entire case, look to and examine every fact and circumstance to which the witnesses have testified, and, applying the rules of law as embodied in the foregoing charge, determine for yourselves whether the plaintiff used that care and caution for his own safety and preservation which the law, as above explained, required him to exercise to entitle him to a recovery; and also determine whether the employes of defendant, at and just prior to the time plaintiff was hurt, discharged the duties which the law enjoined upon them touching plaintiff's safety and welfare. It is your province to determine, from a consideration of all the facts and circumstances in evidence, taken in connection with the charge of the court, whether there was negligence on the part of the defendant, and, if so, whether the injuries of plaintiff

were occasioned entirely by the negligence or improper conduct of the defendant, or whether the plaintiff himself so far contributed to them by his own negligence or want of ordinary care and caution that but for such negligence or want of care and caution on his part the misfortune would not have happened. If you find that the defendant's employes were negligent, and that the plaintiff's injuries were occasioned entirely by their negligence or improper conduct, then your verdict should be for the plaintiff. But if, on the other hand, you are satisfied that the defendant's employes were not negligent on the occasion in question, or if they were negligent, and you find that plaintiff himself so far contributed to his injuries, by his own negligence or want of care and caution, that but for his negligence or want of care and caution he would not have been injured, then, in either of such events, your verdict should be for the defendant.

If, in view of the testimony and the foregoing instructions, your verdict be in favor of the plaintiff, you will award him such an amount of actual damages as will compensate him for the injuries he has sustained. In making your estimate of such damages you are authorized to take into consideration the physical and mental suffering of the plaintiff, the probable effect of the injury in future upon his health, and the use of his injured limbs, and his ability to labor and attend to his affairs, and, generally, any reduction of his power and capacity to earn money and pursue the course of life which he might otherwise have done. *Railroad Co.* v. *Randall,* 50 Tex. 261; *Brown* v. *Sullivan,* 71 Tex. 476, 10 S. W. Rep. 288. The object of the law in cases like the present is simply to compensate the injured party for the injuries he has sustained; nothing more. You are the exclusive judges of the credibility of the witnesses and of the weight to which their testimony may be entitled, and you are authorized, in reaching a conclusion upon the issues in the case, to base your finding upon a preponderance of the evidence. As impartial jurors, you will fairly consider the issues between the parties, and reach such a conclusion as will commend itself to your own judgments, and such as will attain, as nearly as you may be able, the very right and justice of the cause.